**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

No. 12-2621

GABRIEL JOSEPH CARRERA,
on behalf of himself and all others similarly situated,
*Appellee,*

v.

BAYER CORPORATION; BAYER HEALTHCARE, LLC,
*Appellants.*

———————————————

Appeal from the United States District Court
for the District of New Jersey
D. Ct. Civil No. 2-08-cv-04716
(The Honorable Jose L. Linares)

———————————————

**BRIEF AMICUS CURIAE OF PUBLIC CITIZEN, INC.**
**IN SUPPORT OF PETITION FOR REHEARING OR**
**REHEARING EN BANC**

———————————————

Allison M. Zieve                       Brian Wolfman
Public Citizen Litigation Group        600 New Jersey Avenue NW
1600 20th Street NW                     Washington, DC 20001
Washington, DC  20009                   (202) 661-6582
(202) 588-1000


October 2, 2013                         Counsel for Amicus Curiae
                                        Public Citizen, Inc.

## CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1 & 29(c)(1), amicus curiae Public Citizen, Inc. states that it has no parent corporation and that there is no publicly held corporation that owns 10% or more of Public Citizen, Inc.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

INTEREST OF AMICUS CURIAE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      The Panel Decision Is a "Critical Precedent" That Will Have a "Significant
        Impact" on Consumers' Ability to Seek Redress for Deceptive Marketing
        and Defective Products.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     If Allowed to Stand, the Panel's Decision Would Negate the Rights of
        Class Members Without Advancing Any Legitimate Countervailing
        Interest.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF BAR MEMBERSHIP

CERTIFICATE OF SERVICE

LOCAL RULE 31.1(C) CERTIFICATIONS

# TABLE OF AUTHORITIES

CASES                                                                                    Pages

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Beer v. United States*,
    671 F.3d 1299 (Fed. Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Bogard v. Cook*,
    586 F.2d 399 (5th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Brown v. Ticor Title Insurance Co.*,
    982 F.2d 386 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Carnegie v. Household International, Inc.*,
    376 F.3d 656 (7th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gonzales v. Cassidy*,
    474 F.2d 67 (5th Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hansberry v. Lee*,
    311 U.S. 32 (1940). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hecht v. United Collection Bureau, Inc.*,
    691 F.3d 218 (2d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hughes v. Kore of Indiana Enterprise, Inc.*,
    __ F.3d __, 2013 WL 4805600 (7th Cir. Sept. 10, 2013). . . . . . . . . . . . . . . 7

*Johnson v. General Motors Corp.*,
    598 F.2d 432 (5th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Mace v. Van Ru Credit Corp.*,
    109 F.3d 338 (7th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Marcus v. BMW of North America*,
    687 F.3d 583 (3d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Mathews v. Eldridge*,
    424 U.S. 319 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Pate v. United States*,
    328 F. Supp. 2d 62 (D.D.C. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Real Estate Title and Settlement Services Antitrust Litigation*,
    869 F.2d 760 (3d Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Stephenson v. Dow Chemical Co.*,
    273 F.3d 249 (2nd Cir. 2001),
    *aff'd by equally divided court*, 539 U.S. 111 (2003). . . . . . . . . . . . . . . . . 8

*Twigg v. Sears, Roebuck & Co.*,
    153 F.3d 1222 (11th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## STATUTES AND RULES

28 U.S.C. § 1746. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Federal Rule of Civil Procedure 23(c)(2)(B)(vi). . . . . . . . . . . . . . . . . . . . . . . . . 5

Federal Rule of Civil Procedure 23(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

MISCELLANEOUS

BakerHostetler, *Carrera v. Bayer Corp.: Third Cir. Vacates Class Certification*
        *Order*, Class Action Lawsuit Defense,
        Aug. 26, 2013, at http://bit.ly/1dp4vtE. . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

John H. Beisner, et al., Miller, & Schwartz, Skadden Arps, *Third Circuit Rejects Class*
*Without*
        *Objective Means of Identifying Members*,
        Aug. 21, 2013, at http://bit.ly/169FgME. . . . . . . . . . . . . . . . . . . . . . . . . . . 4

BNA Snapshot, Pharmaceuticals Certification Vacated for Weight
        Loss Pill Class, Aug. 21, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and*
        *Their Fee Awards*, J. Emp. L. Stud. 811 (2010). . . . . . . . . . . . . . . . . . . . . . 9

Frank Cruz-Alvarez, *Third Circuit Reaffirms "Rigorous Analysis' for Ascertaining*
        *Class Members under Rule 23*,
        The Legal Pulse, Sept. 3, 2103, at http://bit.ly/18yDIG4. . . . . . . . . . . . . . . 3

Manual for Complex Litigation, Fourth (Fed'l Judicial Ctr. 2004). . . . . . . . 6, 10, 12

NERA Economic Consulting Releases Semiannual Securities Class Action
        Trends Report, July 24, 2012, at http://www.nera.com/83_7801.htm. . . . . . . 9

William B. Rubenstein, et al., *Newberg on Class Actions*
        (4th ed. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Rhinehart, Faruki Ireland & Cox PLL, *Third Circuit Gives Ascertainability*
        *Argument Teeth*, Aug. 22, 2013, at http://bit.ly/1aTtVSI. . . . . . . . . . . . . . . 3

## INTEREST OF AMICUS CURIAE

Founded in 1971, Public Citizen, Inc. is a non-profit consumer advocacy organization with more than 300,000 members and supporters nationwide. Public Citizen advocates before Congress, administrative agencies, and the courts on a wide range of issues, and works for enactment and enforcement of laws protecting consumers, workers, and the public. Public Citizen often represents members' interests in litigation and as amicus curiae.[1]

Public Citizen believes that class actions are an important tool for seeking justice where a defendant's wrongful conduct has harmed many people and resulted in injuries that are large in the aggregate, but not cost effective to redress individually. In that situation, a class action offers the best means for both individual redress and deterrence of wrongful conduct, while also serving the defendant's interest in achieving a binding resolution of the claims on a broad basis, consistent with due process. At the same time, Public Citizen has long recognized that class actions may be misused, to the detriment of absent class members. Public Citizen attorneys have,

---

[1] All parties have consented to the filing of this brief. No counsel for any party authored this brief in whole or part. Undersigned counsel Brian Wolfman is "of counsel" to one of the law firms (Gupta Beck PLLC) representing the plaintiffs on the petition for rehearing en banc, but he did not author the petition in whole or in part, and none of the Gupta Beck attorneys who worked on the petition played any role in authoring this amicus brief. Apart from Public Citizen, no person or organization, including parties or parties' counsel, contributed money intended to fund the preparation and submission of this brief.

in many cases, represented class members whose rights have been compromised by the improper certification of classes and the approval of settlements that are not in their interests or that have been entered in violation of due process rights, such as the right of absent class members to receive notice and to opt out. *See, e.g., In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315 (3d Cir. 2001); *In re General Motors Corp. Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995).

The interests of both named and absent class members, defendants, the judiciary, and the public at large are best served by adherence to the principles incorporated in Federal Rule of Civil Procedure 23. Public Citizen has sought to advance this view by participating, either as counsel or amicus curiae, in many significant class actions, including *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), *Devlin v. Scardelletti*, 536 U.S. 1 (2002), and *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). Public Citizen is filing this brief because, in its judgment, the panel decision disregarded those Rule 23 principles.

## ARGUMENT

### I. The Panel Decision Is a "Critical Precedent" That Will Have a "Significant Impact" on Consumers' Ability to Seek Redress for Deceptive Marketing and Defective Products.

"*Carrera* is a momentous victory for manufacturers of consumer products, as well as a significant decision for class action defendants in general. ... If *Carrera* is

any indication of things to come, the viability of consumer class actions is in question."[2] This statement about the panel decision in this case from a defense-side lawyer sums up the view of counsel for plaintiffs and defendants alike. Another defense-side lawyer put it this way: "Manufacturers are walking away with a big win in *Carrera*. ... In the future, litigants will likely see *Carrera* and *Marcus* having a significant impact on certifications of class actions."[3]

Specifically, "[t]he *Carrera* decision makes it more difficult for class action plaintiffs, particularly within the Third Circuit, to demonstrate that a class is ascertainable, even where the determination of class membership seemingly does not involve complex or complicated factual issues."[4] Accordingly, the "recent ruling is a

---

[2] Rhinehart, Faruki Ireland & Cox PLL, *Third Circuit Gives Ascertainability Argument Teeth*, Aug. 22, 2013, at http://bit.ly/1aTtVSI.

[3] Frank Cruz-Alvarez, *Third Circuit Reaffirms "Rigorous Analysis' for Ascertaining Class Members under Rule 23*, The Legal Pulse, Sept. 3, 2103, at http://bit.ly/18yDIG4 (article by attorney at Shook, Hardy & Bacon, LLP). *See also* BNA Snapshot, Pharmaceuticals Certification Vacated for Weight Loss Pill Class, Aug. 21, 2013 (quoting counsel for Bayer's amicus PLAC: "This decision will be a critical precedent in class actions asserting fraud or defect allegations about many products (especially consumable or disposable products) for which neither retailers nor consumers keep sales or purchase receipts.").

[4] BakerHostetler, *Carrera v. Bayer Corp.: Third Cir. Vacates Class Certification Order*, Class Action Lawsuit Defense, Aug. 26, 2013, at http://bit.ly/1dp4vtE.

significant win for manufacturers of consumer products, particularly disposable items (including food) for which consumers do not tend to keep receipts."[5]

When a company exposes many consumers to the same deceptive practice, a class action is often the only effective way to halt and redress the wrongdoing because, as the Supreme Court has observed, "small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). "The policy at the very core of the class action mechanism is to overcome [this] problem .... A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Id.* (quoting *Mace* v. *Van Ru Credit Corp.,* 109 F. 3d 338, 344 (7th Cir. 1997)). In cases such as this one, class actions offer the only means for achieving individual redress and deterrence of wrongful conduct.

For the same reasons, class actions are inextricably linked to the vindication of substantive rights. The panel's decision, rightly touted by defense counsel as imposing a significant impediment to class certification, offers companies (often the sole source of identifying information) a way to avoid accountability for deceptive practices and

---

[5] John H. Beisner, et al., Miller, & Schwartz, Skadden Arps, *Third Circuit Rejects Class Without Objective Means of Identifying Members*, Aug. 21, 2013, at http://bit.ly/169FgME.

4

unsafe products and threatens consumers' ability to vindicate their rights. Protecting due process rights of individual class members and facilitating collective remedies are both important goals, and, if the right balance is struck, neither need be sacrificed to the other. The panel decision does not strike that balance.

## II. If Allowed to Stand, The Panel's Decision Would Negate the Rights of Class Members Without Advancing Any Legitimate Countervailing Interest.

Unless overturned, the panel's ruling would make it impossible for many people injured by deceptive marketing or defective products to obtain relief, would eliminate an important deterrent of illegal conduct, and yet do nothing to protect the legitimate interests of class members or defendants. The panel identified three concerns that an ascertainability requirement purportedly advances. None of these concerns justifies the panel's decision.

**A.** First, the panel said that "ascertainability and a clear class definition allow potential class members to identify themselves for purposes of opting out of a class." Slip. op. 10. Here, the plaintiff stated a "clear class definition"—"all persons who purchased WeightSmart in Florida," *id.* at 5—and the panel did not suggest otherwise. Instead, the panel's concern was the purported difficulty in "ascertaining" the class members so as to protect their opt-out rights. But the right to opt out is fully honored when notice is "reasonably calculated" to reach the defined class. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see* Fed. R. Civ. P. 23(c)(2)(B)(vi). Thus, the

question here is whether class members can be notified of their opt-out rights, consistent with due process.

They plainly can. When class members' names and addresses are known, or are knowable with reasonable effort, notice generally is accomplished by first-class mail. *See, e.g., Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174–175 (1974). When that is not the case, courts use alternative means, such as notification through third parties, paid advertising, or posting in places frequented by class members. One or more of these alternatives would be used here because records of class members' WeightSmart purchases are incomplete. The constitutional propriety of these alternative notice methods has been settled law for more than 60 years. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-19 (1950); *see also Manual for Complex Litigation, Fourth* § 21.311, at 292 (Fed'l Judicial Ctr. 2004) (*Manual*) (discussing forms of non-first-class-mail notice regularly approved by courts "when individual names or addresses cannot be obtained through reasonable efforts" and citing representative cases). Therefore, this case does not present any genuine concern about providing lawful notice to class members of their opt-out rights.

Moreover, in small-claims class actions like this one, where "only a lunatic or a fanatic" would litigate the claim individually, *Carnegie v. Household Intern., Inc.*, 376 F.3d 656, 661 (7th Cir. 2004), and opt-out rights are thus unlikely to be exercised,

6

it is particularly important that the types of notice employed be calibrated to ensure that the value of the plaintiffs' protected interests is not overwhelmed by the cost of safeguarding those interests. *See Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976); *see also, e.g., Hughes v. Kore of Indiana Enter., Inc.*, __ F3d. __, 2013 WL 4805600, *4 (7th Cir. Sept. 10, 2013) (in case involving the claims of ATM users individually valued at $1,000 or less, the court indicated that the notice "effort [should be] commensurate with the stakes" and approved a notice plan consisting of "sticker notices on [the defendant's] two ATMs and publication of a notice in the principal Indianapolis newspaper and on a website" as "adequate in the circumstances").

In sum, the panel's decision would destroy class members' property interests in many cases, such as this one, by making it impossible to pursue a class action in situations where a class action is the only practical means for vindicating the class members' rights. Although the decision extols the importance of the class members' rights in principle, it renders them meaningless in practice.

**B.** The panel's second stated justification for the ascertainability requirement—that "it ensures a defendant's rights are protected by the class action mechanism," slip op. 10—also does not justify the panel's ruling. The panel's concern focused on only one "right" of a class-action defendant: that it not be subjected to repeated liability via collateral attacks by class members claiming that their recoveries

7

in the class action had been "diluted by fraudulent or inaccurate claims." *Id.* at 17. As explained in the petition for rehearing en banc (at 3), the concern about collateral attacks is built on a hypothetical chain of events without any basis in reality.

Our research has revealed that, since the birth of Rule 23, there have been only ten successful collateral attacks on class-action judgments in the federal courts.[6] Only two of these—*Stephenson* and *Twigg*—involved collateral attacks on class actions certified under Rule 23(b)(3), which is significant because the ascertainability requirement may apply only in Rule 23(b)(3) cases. *See* slip op. 9 (citing *Marcus v. BMW of N. Am.*, 687 F.3d 583, 592-93 (3d Cir. 2012)). And *none* of these successful collateral attacks involved a problem in "ascertaining" who was in the class or, to drill down on the panel's concern, an assertion that some class members' interests had been "diluted by fraudulent or inaccurate claims." *Id.* at 17. That is, according to our research, a collateral attack has *never* been sustained on the theory advanced by the

---

[6] *See Hansberry v. Lee*, 311 U.S. 32 (1940); *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218 (2d Cir. 2012); *Beer v. United States*, 671 F.3d 1299 (Fed. Cir. 2012); *Stephenson v. Dow Chemical Co.*, 273 F.3d 249 (2nd Cir. 2001), *aff'd by equally divided court,* 539 U.S. 111 (2003); *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386 (9th Cir. 1992); *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1223-24 (11th Cir. 1998); *Johnson v. General Motors Corp.*, 598 F.2d 432 (5th Cir. 1979); *Bogard v. Cook*, 586 F.2d 399 (5th Cir. 1978); *Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir. 1973); *Pate v. United States*, 328 F. Supp. 2d 62 (D.D.C. 2004); *Cf. In re Real Estate Title and Settlement Servs. Antitrust Litig.*, 869 F.2d 760 (3d Cir. 1989) (reversing anti-suit injunction against collateral attack on class judgment but not ruling on the propriety of the attack).

panel. Therefore, it should come as no surprise that the panel's expressed concern about potential collateral attacks based on "dilution" of class members' recoveries is unadorned by any citation. *See id.*[7] For these reasons, class-action defendants have no legitimate concern that, absent the panel's novel extension of the ascertainability requirement, they will face collateral attacks on class-action judgments to which they are parties.

The vanishingly small number of successful collateral attacks that have imposed costs on class-action defendants shows that the risk of future successful collateral attacks is itself vanishingly small. This number appears even smaller in light of the number of class-action judgments potentially subject to collateral attack. That number is comparatively large, and many of those judgments, as would be the case here if Carrera's class action were settled or litigated to judgment, involve small "negative-value" claims arising under consumer protection, securities, and similar statutes that depend on the class-action device for their survival.[8] Given this large number of cases,

---

[7] Further, according to our review of reported federal decisions rejecting collateral attacks on class-action judgments, in no case has a litigant seeking to mount a collateral attack ever even argued the "dilution" theory advanced by the panel.

[8] *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, J. Emp. L. Stud. 811, 813 (2010) (study showing that "that district court judges approved 688 class action settlements" in 2006 and 2007); NERA Economic Consulting Releases Semiannual Securities Class Action Trends Report, July 24, 2012, at http://www.nera. com/83_7801.htm (among federal securities class actions alone, federal district courts approved 128 and 123 class-action settlements in 2010

if the panel's concern about dilution-based collateral attacks were correct, the courts would have been entertaining them for decades. Instead, as explained, there have been none.

If the courts need to employ additional tools to police fraudulent and inaccurate class-action claims in particular cases—and nothing in the panel's decision suggests that they do—those tools should not include an expanded ascertainability requirement at the class-certification stage, which would derail legitimate cases before the court has any idea whether fraud or inaccuracy is likely to be a problem. Rather, concerns about claims processing in consumer class actions should be addressed in case management orders at the back end, *see* Fed. R. Civ. P. 23(d), as they have been for decades, with the judicious use of claims administrators, various ADR processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the district court to take into account the size of the claims, the cost of the techniques, and an on-the-ground empirical assess-ment of the likelihood of fraud or inaccuracy.[9] That the panel's unprecedented approach to ascertainability would wipe out that established practice—and with it

---

and 2011, respectively).

[9] *See generally Manual* §§ 21.66-.661, at 331-33; William B. Rubenstein, et al., *Newberg on Class Actions* § 11:33 (4th ed. 2008).

10

most small-claims class actions—is reason alone to grant the petition for rehearing en banc.

**C.** The panel also explained that ascertainability "ensures that the parties can identify class members in a manner consistent with the efficiencies of a class action." Slip. op. 10. In this regard, the panel focused on the interests of absent plaintiffs, maintaining that Carrera's method for "ascertaining the class"—class member affidavits—creates "a significant likelihood their recovery will be diluted by fraudulent and inaccurate claims." *Id.* at 17.

This concern is unwarranted for two related reasons. First, as with the panel's concern about collateral attacks, the panel provides no real-world evidence that, in small-claims class actions, inaccurate claims impose significant harm on deserving class members. The notion that non-class-members will submit fraudulent or otherwise faulty affidavits, under penalty of perjury (*see* 28 U.S.C. § 1746), in the hope of collecting $8.99 (the cost of one 50-tablet bottle of WeightSmart, *see* slip op. 4), or even $84.95 (the cost of five 100-tablet bottles, *see id.*), is, with respect, far-fetched. As with the panel's collateral-attack scenario, the panel cites *no* case authority or other evidence suggesting that class-member fraud or inaccuracy has plagued small-claims class actions to the detriment of "true" class members.

Second, the panel's concern for possible dilution of class member recoveries ignores the realities of modern class-action practice. The *Manual for Complex Litigation* recognizes that, in some cases, "increasing one claimant's benefits will reduce another's recovery." *Manual*, § 21.66, at 331. Submission of "claim forms by oath or affirmation" may be required in some circumstances, while in other situations additional "substantiation of claims," such as invoices or other records, is appropriate. *Id.* In all cases, "documentation ... should be no more burdensome than necessary." *Id.*

Accordingly, the appropriate "[a]udit and review procedures ... depend on the nature of the case." *Id.* at 332. Large-claim cases "might warrant a field audit to check for inaccuracies or fraud," *id.* (case citation omitted), medium-sized claims may be subjected to "random sampling" audit inquiries, and small claims may be accepted on the basis of the sworn claim forms alone, *id.* The *Manual*'s endorsement of these varying procedures to verify class membership and to distribute class benefits represents the collective judgment of the federal judiciary. At a minimum, the *Manual*'s view—which is not mentioned in the panel's opinion—should not be cast aside until the full Court has had an opportunity to review the panel's decision.[10]

---

[10] The *Manual*'s endorsement of these claims procedures comes in discussion of class-action settlements, not in conjunction with "ascertaining" class members at the certification stage. This point underscores that, where the class definition is clear, concerns about claims processing should not be used to scuttle class actions in their infancy but, rather, should be considered in case-management orders at the back end, when the court and the parties are best equipped to address potential fraud or inaccuracy.

12

*   *   *

In the end, the concern that class-member affidavits and the other tools suggested by class counsel will be insufficient to unearth fraud and inaccuracy demands a reality-check. The tools for ascertaining class membership and distributing recoveries traditionally have been calibrated to the circumstances of each case. But even assuming that some class members would not receive all that they deserve, if the class-action device is effectively unavailable in a case where the value of each class member's claim is small, the alternative to a modicum of rough justice is no justice at all, because an economically rational individual would not bring an individual suit. Put another way, in a case where the "undiluted" value of each class member's claim is $100, any rational class member would prefer an $80 "diluted" recovery to nothing at all.

## CONCLUSION

The petition for rehearing should be granted.

October 2, 2013                     Respectfully submitted,

    Allison M. Zieve             Brian Wolfman
    Public Citizen Litigation Group    Georgetown University Law Center
    1600 20th Street NW         600 New Jersey Avenue NW
    Washington, DC 20009      Washington, DC 20001
    (202) 588-1000           (202) 661-6582

                  Counsel for Amicus Curiae
                  Public Citizen, Inc.

13

## CERTIFICATE OF SERVICE

I certify that on October 2, 2013, a true and correct copy of the foregoing brief was served on all parties to this appeal, via CM/ECF, pursuant to Third Circuit Rule 25.1(b), because counsel for all parties are Filings Users who will be served electronically by the Notice of Docket Activity.

/s/
Allison M. Zieve

## CERTIFICATE OF BAR MEMBERSHIP

I certify that Allison M. Zieve and Brian Wolfman, counsel for amicus curiae, are members of the Bar of this Court.

/s/
Allison M. Zieve

/s/
Brian Wolfman

## LOCAL RULE 31.1(C) CERTIFICATIONS

I certify that the text of the electronic brief is identical to the text of the ten paper copies mailed to the Court pursuant to Local Rule 31.1(b)(3). I further certify that the electronic file of this brief was scanned with VIPRE anti-virus software and that no virus was detected.

/s/
Allison M. Zieve