No. 12-2621

IN THE

# United States Court of Appeals
# for the Third Circuit

———————————

GABRIEL JOSEPH CARRERA,
on behalf of himself and all others similarly situated,

*Plaintiff-Appellee*,

v.

BAYER CORPORATION AND BAYER HEALTHCARE, LLC,

*Defendants-Appellants.*

———————————

On Appeal from the United States District Court
for the District of New Jersey

———————————————————

## BRIEF OF *AMICI CURIAE* PROFESSORS OF CIVIL PROCEDURE AND COMPLEX LITIGATION IN SUPPORT OF PETITION FOR REHEARING *EN BANC*

———————————————————————

Myriam Gilles
Cardozo School of Law
55 Fifth Avenue, Room 402
New York, NY 10003

Richard H. Frankel (Pa. Bar #310258)
Earle Mack Sch. of Law, Drexel University
3320 Market Street
Philadelphia, PA 19104
*Counsel for* Amici Curiae

October 4, 2013

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.....................................................................................ii

INTEREST OF *AMICI CURIAE*.......................................................................... 1

INTRODUCTION ................................................................................................. 2

ARGUMENT.......................................................................................................... 4

    I.  There Is No Coherent Basis for Requiring The Identification Of
       Individual Class Members At The Certification Stage............................ 4

    II. The Panel Decision Is Overly Broad, Threatening All Small-Value
       Consumer Class Actions......................................................................... 10

CONCLUSION .................................................................................................... 11

CERTIFICATIONS OF COUNSEL .................................................................. 12

CERTIFICATE OF SERVICE ........................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Amchem Prods. Inc. v. Windsor,*
521 U.S. 591 (1997)............................................................................10

*Carrera v. Bayer Corp.,*
Civ. A. No. 08-4716, 2011 WL 5878376 (D.N.J. Nov. 22, 2011) ...................8

*Hughes v. Kore of Indiana Enterprise, Inc.,*
_F.3d_, No. 13-8018, at 9 (7th Cir., Sept. 10, 2013).......................................10

*Juris v. Inamed Corp.,*
685 F.3d 1294 (11th Cir. 2012), *cert. denied*, 135 S. Ct. 940 (2013) ................8

*Marcus v. BMW of N. Am. LLC,*
687 F.3d 583 (3d Cir. 2012) .................................................................6

*Wachtel v. Guardian Life Ins. Co.,*
453 F.3d 179 (3d Cir. 2006) .................................................................5

*Xavier v. Philip Morris USA, Inc.,*
787 F. Supp. 2d 1075 (N.D. Cal. 2011) .............................................7

### RULES

FED. R. CIV. P. 23 .............................................................................3, 5, 6, 8, 10

FED. R. APP. 29(c)(5)..........................................................................1

### OTHER AUTHORITIES

3 CONTE & NEWBERG, NEWBERG ON CLASS ACTIONS, § 10:5 (2002)...................6

1 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS, §3:1 (5th ed.
2013) .............................................................................................7

Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71 (2007) ..................9

Judith Resnik, *From "Cases" to "Litigation,"* 54 LAW & CONTEMP. PROBS. 5 (1991) ...............................................................................................3

WRIGHT & MILLER, 7A FEDERAL PRACTICE AND PROCEDURE (3d ed., 2013), § 1760 ......................................................................................................2

## INTEREST OF AMICI CURIAE

The law professors named below teach and write about civil procedure and class action law. *Amici* are among the many scholars who have spent a considerable amount of time thinking, writing, and teaching about complex litigation issues, and share an interest in presenting this Court with an impartial view as to the appropriate doctrinal framework governing this highly consequential matter.[1] The complete list of signatories is as follows:

**Arthur R. Miller**, University Professor, New York University School of Law

**Myriam Gilles**, Professor of Law, Cardozo School of Law

**Howard M. Erichson**, Professor of Law, Fordham University School of Law

**Charles M. Silver**, McDonald Endowed Chair in Civil Procedure, University of Texas School of Law

**Jay Tidmarsh**, Professor of Law, Notre Dame Law School

**David Marcus**, Professor of Law, University of Arizona Rogers College of Law

**Anthony Sebok**, Professor of Law, Cardozo School of Law

---

[1] All parties consent to the filing of this brief. Neither party's counsel authored this brief in whole or in part, and no person other than amici and its counsel contributed money towards the preparation or submission of this brief. *See* FED. R. APP. 29(c)(5).

**Joshua Paul Davis**, Professor of Law, University of San Francisco School of Law

**Adam M. Steinman**, Professor of Law, Seton Hall School of Law

**Adam Zimmerman**, Associate Professor of Law, Loyola Law School

## INTRODUCTION

We submit this *amici curiae* brief, on behalf of interested professors of the law of civil procedure and complex litigation, because we worry that the panel decision misapprehends the nature of class actions. A class action requires a clear and objective class definition, but it does not require that individual class members be identifiable at the class certification stage. *See* WRIGHT & MILLER, 7A FEDERAL PRACTICE AND PROCEDURE (3d ed., 2013), § 1760 ("In keeping with the liberal construction to be given the rule, it has been held that the class does not have to be so ascertainable that every potential member can be identified at the commencement of the action."). Indeed, to impose such a requirement is to miss the point that class actions offer a form of representative litigation distinct from traditional joinder mechanisms.

The panel's opinion confuses the requirement that a class definition must be clear, and in that sense "ascertainable," with the notion that individual class members must be identifiable at the class certification stage—a notion entirely divorced from the text and purposes of Rule 23. This doctrinal error threatens to render the class action procedure unavailable in the very small-value consumer cases that necessitated Rule 23 in the first instance. *See, e.g.,* Judith Resnik, *From "Cases" to "Litigation,"* 54 LAW & CONTEMP. PROBS. 5, 14 (1991) (explaining that Benjamin Kaplan, a primary drafter of Rule 23, believed the rule "provide[d] means of vindicating the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.") (citing Benjamin Kaplan, *A Prefatory Note, The Class Action—A Symposium,* 10 B.C. INDUST. & COMM. L. REV. 497, 497 (1969)).

## ARGUMENT

### I.    There Is No Coherent Basis for Requiring The Identification Of Individual Class Members At The Certification Stage.

The panel's decision offers no explanation for why the identity of individual class members must be ascertainable *before* the class is certified. Instead, it offers several conclusory statements about "ascertainability," none of which support the conclusion that the individual class members must be identifiable prior to class certification:

- "First, at the commencement of a class action, ascertainability and a clear class definition allow potential class members to identify themselves for purposes of opting out of a class."

- "Second, it ensures that a defendant's rights are protected by the class action mechanism."

- "Third, it ensures that the parties can identify class members in a manner consistent with the efficiencies of a class action."

Op. at 10.  In addition, the panel notes that ascertainability protects the interests of absent class members.  Op. at 17.

None of these assertions withstand scrutiny as a basis for the result reached by the panel's decision. First, the "opt out" rationale for requiring identification of individual class members makes no sense. The putative

4

class here consists of all persons who purchased the defendant's product in Florida during a certain time period. That is the "clear class definition" that will be reflected in the class notice. And, on the basis of that notice, potential class members will either opt out or not. *See, e.g., Wachtel v. Guardian Life Ins. Co.*, 453 F.3d 179, 187 (3d Cir. 2006). What they need, in order to make the opt-out decision, is a clear class definition—and they have one here. Op. at 5, n.1 (class defined as Florida consumers who purchased WeightSmart® between December 2003 and January 2007). Whether it is easy or hard to ascertain the identities of the *members* of that class from the defendant's databases or other sources is irrelevant to the class members' decision whether to opt out.

Second, while it is true that an objective, ascertainable class definition protects defendant's rights, this goal is not at all served by a requirement that individual class members must be identifiable. A defendant has an interest in liability and finality. Damages liability under Rule 23 is determined *in the aggregate*.[2] After certifying a damages class under Rule

---

[2] As a leading treatise notes, "[a]ggregate computation of class monetary relief is lawful and proper. Courts have not required absolute precision as to damages and have allowed damages to be proven by reference to the class as a whole, rather than by reference to each individual

23(b)(3), courts determine the extent of defendant's monetary liability *to the class*. Whether or not any given individual can establish membership in that class is of no moment to the defendant in the typical Rule 23(b)(3) case. Once aggregate damages are established, the defendant has no interest in the addition or subtraction of members from the class roster.[3] The defendant has a right not to pay damages beyond its proven aggregate liability, but the panel's ascertainability rule does nothing to protect that right.

The panel further appears to suggest that its ascertainability rule advances the defendant's interest in finality by enabling a determination of "who is in the class and bound by [a] ruling." Op. at 11-12 (quoting *Bakalar v. Vavra*, 237 F.R.D 59, 64 (S.D.N.Y. 2006)); *see also id.* at 7. But in

---

class member. Challenges that such aggregate proof affects substantive law and otherwise violates the defendant's due process or jury rights to contest each member's claim individually, will not withstand analysis." 3 CONTE & NEWBERG, NEWBERG ON CLASS ACTIONS, § 10:5 (2002).

[3] *Marcus v. BMW of North America LLC*, 687 F.3d 583 (3d Cir. 2012), presented a different and unusual set of facts due to the absence of any record evidence – either in the defendant's databases or otherwise – concerning the total number of vehicles outfitted with RFTs and thus fitting the class definition. As such, aggregate liability could not be determined, and "each claim submitted would have increased the amount of money the defendants would have had to pay." Op. at 16.

determining who was bound by an earlier ruling arising from a class case, what matters is the clarity of the class definition. *See, e.g., Xavier v. Philip Morris USA, Inc.,* 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) ("The class definition must be clear in its applicability so that it will be clear later on whose rights are merged into the judgment, that is, who gets the benefit of any relief and who gets the burden of any loss. If the definition is not clear in its applicability, then satellite litigation will be invited over who was in the class in the first place."); 1 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS, §3:1 (5th ed. 2013). The class definition here is clear. A future plaintiff alleging he purchased WeightSmart® in Pennsylvania, for example, will not be bound by a judgment in this case, unlike a claim based on purchases made in Florida. In either event, the future court will consult the class definition in this case, and not a Bayer database.

Third, in citing to the "efficiencies" served by "identify[ing] class members," Op. at 10, the panel decision conflates class certification with the claims administration stage of the proceedings. The "efficiencies" that are promoted by identifying individual class members plainly relate to the claims administration stage. It is in connection with the allocation of damages between and among class members that there is a need to

7

ascertain the identities of those individual members.[4] Neither the panel nor

the defendant has suggested any efficiencies outside the claims process that

are served by a rule requiring ascertainability of individual class members.[5]

Finally, the panel asserts that "ascertainability protects absent class

members" inasmuch as it would be "unfair to absent class members if there

is a significant likelihood their recovery will be diluted by fraudulent or

---

[4] The district court dismissed as "speculative" the defendant's argument that the damages distribution process would be unmanageable. *Carrera v. Bayer Corp.*, Civ. A. No. 08-4716, 2011 WL 5878376, at *4 (D.N.J. Nov. 22, 2011). In fact, this concern is baseless because Florida law mandates a procedure for the distribution of unclaimed funds. *See* Op. at 7. Thus, even if a court were to apply stringent proof of purchase requirements upon putative claimants, there is nothing indeterminate about the claims process:  those claimants who can satisfy the stringent proof requirements will be compensated, and the balance of funds will then be distributed via the statutorily prescribed mechanism. And as a consequence, the instant case does not raise the sometimes controversial issue of the extent to which the trust law doctrine of *cy pres* is available to deal with funds that are unclaimed in a class action settlement.

[5] The panel did not appear to base its rule upon the need to identify class members for purposes of providing notice. In any event, such a rule would be inconsistent with Rule 23(c)(2)(B)'s command to provide the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Indeed, Rule 23 does not require actual notice to class members and implicitly recognizes that some class members will not be identifiable. *See, e.g., Juris v. Inamed Corp.*, 685 F.3d 1294, 1320–1322 (11th Cir. 2012), *cert. denied*, 135 S. Ct. 940 (2013) (rejecting argument that actual notice is required and concluding that the standard remains "best practicable notice").

inaccurate claims." Op. at 17. In other words, on the panel's view, every dollar that goes to an uninjured party reduces the funds available to compensate injured class members. But this ignores reality in two ways. First, in practice, only a tiny fraction of eligible claimants ever make submissions to class administrators in consumer cases.[6] And indeed, the panel posits unfairness to absent class members only in cases where "there is a significant likelihood" of dilution. Given low historic claims rates, it is difficult to imagine a consumer case that would satisfy the "significant likelihood" standard, and certainly this one does not. Second, class certification in a case like this one provides the only meaningful possibility for compensation at all. The stakes are too small to make individual actions viable. To deny class certification based on a fear of dilution of claims would, in effect, deprive potential class members of *any* recovery as a means to ensure they do not recover too little.

---

[6] *See, e.g.*, Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 120 (2007) ("there are so many examples of shockingly low participation rates that what used to be extreme is becoming ordinary. In one suit against Wells Fargo, less than 5% of the eligible class members bothered to claim their cash refunds under the settlement plan. In extreme cases, the rate has been less than one percent. In one class action with forty million members, only 228 individuals actually filed claims against the settlement fund.").

## II.    The Panel Decision Is Overly Broad, Threatening All Small-Value Consumer Class Actions.

The practical consequence of the panel's ruling is that no case involving a low-cost consumer good purchased via a retailer may proceed as a class action. And yet, these are the paradigmatic cases that the framers of Rule 23 had in mind. *See, e.g., Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). Whatever one may think of the importance of compensating plaintiffs for small economic injuries, no one doubts that class actions serve—and were intended to serve—a deterrent function in the marketplace.  *See, e.g., Hughes v. Kore of Indiana Enterprise, Inc.,* _F.3d_, No. 13-8018, at 9 (7th Cir., Sept. 10, 2013) (Posner, J.) ("[W]hen what is small is not the aggregate but the individual claim, [] that's the type of case in which class action treatment is most needful. … A class action, like litigation in general, has a deterrent as well as a compensatory objective."). The panel's imposition of a non-rules-based requirement is especially troubling because it takes class actions off the table as a tool to deter corporate malfeasance. And it means

that, no matter how clear the evidence of wrongdoing and how definite the

aggregate liability, plaintiffs have no redress in the typical consumer case

involving small retail transactions.

## CONCLUSION

The petition for rehearing and rehearing en banc should be granted.


Respectfully submitted,

                         /s/ Richard H. Frankel
Myriam Gilles            Richard H. Frankel (Pa. Bar #310258)
Cardozo School of Law    Earle Mack Sch. of Law, Drexel University
55 Fifth Avenue, Room 402  3320 Market Street
New York, NY 10003       Philadelphia, PA 19104

Dated: October 4, 2013

## CERTIFICATIONS OF COUNSEL

Richard H. Frankel certifies that he is a member in good standing of the U.S. Court of Appeals for the Third Circuit.

Richard H. Frankel also certifies that a virus check was performed on the Brief of *Amici Curiae* on October 4, 2013.  Symantec AntiVirus Version 10, fully updated, was used to conduct the virus scan.

/s/ Richard H. Frankel

October 4, 2013

**CERTIFICATE OF SERVICE**

I hereby certify that on October 4, 2013, I electronically filed the

foregoing amici brief with the Clerk of the Court for the U.S. Court of

Appeals for the Third Circuit by using the CM/ECF system. All

participants are registered CM/ECF users, and will be served by the

appellate CM/ECF system.

/s/ Richard H. Frankel
Dated:  October 4, 2013