IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 12-2621

GABRIEL JOSEPH CARRERA,
on behalf of himself and all others similarly situated,
Appellee,

v.

BAYER CORPORATION; BAYER HEALTHCARE, LLC,
Appellants.

Appeal from the United States District Court
for the District of New Jersey
D. Ct. Civil No. 2-08-cv-04716
(The Honorable Jose L. Linares)

**BRIEF AMICUS CURIAE OF ANGEION GROUP, LLC
IN SUPPORT OF PETITION FOR REHEARING OR
REHEARING EN BANC**

James C. Haggerty, Esquire
HAGGERTY, GOLDBERG,
SCHLEIFER & KUPERSMITH
1835 Market Street, Suite 2700
Philadelphia, PA 19103
(267) 350-6600
Attorney Id. No. 30003

October 4, 2013

Counsel for Amicus Curiae
Angeion Group, LLC

# CORPORATE DISCLOSURE STATEMENT

Under Federal Rules of Appellate Procedure 26.1 & 29(c)(1), amicus curiae Angeion Group, LLC states that it has no parent company and that there is no publicly held corporation that owns 10% or more of Angeion Group, LLC.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. i

INTEREST OF AMICUS CURIAE ..................................................... 1

ARGUMENT ........................................................................................ 3

   I. The Panel's Opinion Disregarded Valid Methods for
      Screening Fraudulent Claims, Including Those Identified
      in the Prutsman Declaration, That Have Been Used
      Successfully in the Administration of Class Action
      Settlements and Judgments for Many Years ............................. 3

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Trombley v. Nat'l City Bank*, 759 F. Supp.2d 20, 28 (D.D.C. 2011)                                      3


**Other Authorities:**

*Federal Judicial Center's Judges' Class Action Notice and Claims
    Process Checklist and Plain Language Guide*, available at
    http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf
    /$file/NotCheck.pdf (last visited Oct. 4, 2013)                                                     3

McGovern, Francis E., *Distribution of Funds in Class Actions – Claims
    Administration*, 35 J. Corp. L. 123 (2009)                                                          4

## INTEREST OF AMICUS CURIAE

Angeion Group, LLC ("AG") is a neutral third party class action administration company that submits this brief to explain why the panel's decision rests on fundamental misunderstandings about the way class-action claims screening processes actually work. Specifically, amicus Angeion Group files this brief to call to the full Court's attention the panel's erroneous treatment of the testimony of an experienced class-action administrator—the Declaration of James R. Prustman—("The Prustman Declaration") highlighting various successful methods of fraud detection that claims administration companies routinely employ to detect fraud in class action claims administration after settlement or judgment.

Angeion Group is a class action administration company formed by an experienced team of executives with more than 60 years of experience implementing claims administration and notice solutions for class action settlements and judgments. With executives that have had extensive tenures at four other nationally recognized claims administration companies, Angeion employs a virtual All Star Team of class action settlement administrator thought leaders. Headquartered in a state-of-the-art 14,000 square foot processing and hosting facility in center city Philadelphia, Angeion also provides Healthcare Lien

Resolution services for mass tort related settlement programs, electronic discovery, and court reporting services in the United States and Canada.

As a neutral claims administrator, Angeion Group takes no position on the merits of the underlying class action. Angeion Group submits this brief by consent of the parties.

# ARGUMENT

## The Panel's Opinion Disregarded Valid Methods for Screening Fraudulent Claims, Including Those Identified in the Prutsman Declaration, That Have Been Used Successfully in the Administration of Class Action Settlements and Judgments for Many Years.

There is an inherent tension between a defendant's ability to challenge class membership and a class member's ability to prove it. Nowhere is that tension more apparent than in cases concerning over-the-counter consumer goods. Claims administrators' time-tested fraud-prevention methods are the great equalizer of this inherent tension and allow courts to approve, litigants to settle, and administrators to distribute awards in class actions the would not otherwise be possible. *See* Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist And Plain Language Guide ("The claims process, the claim form itself, and the claims administrator all play roles in ensuring that approved claims are valid claims, so that payments go to class members who meet the criteria."). It is well accepted that, whether following a settlement or a judgment, "[c]lass actions often require a claims process to ensure money is fairly distributed for valid claims." *Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 28 (D.D.C. 2011). The panel's decision, however, disregards the ability of a claims process to do just that and instead erects an impossible-to-meet hurdle at the outset of the class action. For that reason alone, rehearing by the full Court is warranted.

3

By their nature, many over-the-counter consumer goods are low-value items for which reasonable people seldom retain proof of purchase. Recognizing that reality, class action plans of allocation or post-judgment claims processes often contemplate that the only valid method for proving membership in the class is by class-member affidavits, in which class members attest that they purchased the particular product. Despite the inherent potential for fraud, these plans of allocation are routinely approved because courts and counsel for all parties to the litigation have trust in the ability of class action claims administration companies, like Angeion Group, to employ accurate methods for detecting and rejecting fraudulent claims that are made under this settlement paradigm. Class action administrators have a wealth of expertise about how to ensure fair participation and valid claims without fraud and have been refining that expertise for a half century. *See* Francis E. McGovern, *Distribution of Funds in Class Actions—Claims Administration*, 35 J. Corp. L. 123 (2009) (providing case studies demonstrating how experienced claims administrators increase fair participation in class action settlements and at the same time "reduce[]" the "level of potential fraud").

The Federal Judicial Center advises federal judges overseeing class action settlements to "watch for situations where class members are required to produce documents or proof that they are unlikely to have access to or to have retained"—

precisely the sort of situation demanded by the panel's decision. The Federal Judicial Center warns that "such unreasonable requirements" may result in a "low claims rate." But under the panel's decision, such requirements would result in *no* claims—that is, no class action at all—despite the fact that claims administrators have methods for ensuring fair participation without unreasonable requirements.

In this case, the panel's opinion is both internally inconsistent and unjustifiably dismissive in its discussion of the Prutsman Declaration. For instance, the decision notes that the Prustman Declaration did not "propose a model for screening claims that is specific to this case." Panel Op. at 18. The opinion is highly inconsistent in its comments on this point. For instance, the court's opinion earlier characterizes the affidavit as stating "…there are ways to verify the types of affidavits *at issue here* and screen out fraudulent claims" *Id.* at 5. (emphasis added).

Likewise, the panel wholly dismisses the "programmatic audits" that are routinely, successfully used to identify duplicate and fraudulent claims by claims administration companies such as Angeion Group. *Id.* at 19-20. In the claim adjudication and payment process, we employ proven algorithms in a rules-based processing technology that has been derived from the other industries such as the health care claim processing space. This enables us to further identify fraudulent

5

claims based upon a range of data and behavioral patterns. These are "learning" algorithms that are adjusted for each settlement based on the allocation and class qualification criteria of the settlement. These audits are readily applicable and easily translated to the underlying controversy here and are used ubiquitously throughout the claims-administration industry.

Similarly, the fraud-prevention screening factors such as those identified in the Prutsman Declaration —including the verification of prices paid, geographic retail locations, or some combinations thereof—are effective methods routinely employed by claims administrators to weed out the vast majority of fraudulent claims. In the claim entry and acquisition stages, we use sophisticated and state-of-the-art data matching and loading technologies that identify patterns of duplication and fraudulent behavior based on the conditions of the case settlement. Moreover, we work with and collaborate with other settlement administrators, local, and federal authorities in the detection, identification, tracking and reporting of known and new fraudulent filers.

For example, by requiring a class member to provide information about which particular retail establishment they purchased the allegedly defective (or fraudulently marketed) product, a claims administrator could cross reference the class member's response against a list of known retailers and identify those claims

with false information. Likewise, certain products are only sold in a particular geographic location so a class member who claimed, for example, to buy a product in a drug store in Tennessee when the defendant's product was only sold on the Eastern sea board, would be flagged and rejected.

In a situation in which a product is sold ubiquitously, screening methods based on product packaging descriptions (including color, contents, size, or material), as well as purchase time-frame and method of purchase (in-store versus online), can be used successfully to detect fraud. For instance, in a recent settlement administered by another claims administration company, the settlement involved a consumer product sold and marketed via television infomercials and internet banner ads. The ability to purchase via the television infomercial required the customer to purchase the item in multiples of three whereas if the customer purchased via the website, they could buy an individual item. By requiring the class member who was filing the claim to identify both his method of purchase and the number of packages that were purchased, the claims administrator would have a valid fraud detection method to employ.

In light of the availability and success of these screening methods, the panel's concern about class members' claims being diluted ("It is unfair to absent class members if there is a significant likelihood their recovery will be

diluted by fraudulent or inaccurate claims") (Panel Opinion at 17) is completely at odds with the reality of claims administration in consumer class actions—especially given the relatively low claims rate seen in over-the-counter consumer class actions. In fact, the panel's decision effectively requires that perfect reliability be demonstrated at the outset of the case as a prerequisite to class certification. That decision is not only unprecedented, but ignores the way things actually work in the real world. Requiring the parties to create and submit a detailed screening model for each particular case *prior* to class certification—instead of relying on known and proven claims administration industry standards generally—would be a burdensomely expensive and time-consuming effort. Rather, delaying or relaxing the requirement of such granular administrative concerns for the time period following a judgment or settlement of a class action would conserve resources and endorse a sustainable and sensible model of class action claims administration that has served the public and the legal community well for years.

# **CERTIFICATE OF COMPLIANCE**

In accordance with the Federal Rules of Appellate Procedure, counsel for amicus curiae, Angeion Group, LLC, James C. Haggerty, certifies that this Brief complies with the type-volume limitation of Rule 32(a)(7) of the Federal Rules of Appellate Procedure because this Brief contains 1,499 words, excluding the parts of the Brief exempted by Rule 32(a)(7) of the Federal Rules of Appellate Procedure.

Counsel for amicus curiae, Angeion Group, LLC, certifies that this Brief complies with the typeface requirements of Rule 32(a)(7) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(7) of the Federal Rules of Appellate Procedure because this Brief has been prepared in a

proportionally spaced typeface using the 2010 version of Microsoft Word in 14 point Times New Roman font.

Respectfully,

*[signature]*

JAMES C. HAGGERTY, ESQUIRE
HAGGERTY, GOLDBERG, SCHLEIFER & KUPERSMITH
1835 Market Street, Suite 2700
Philadelphia, PA 19103
(267) 350-6600
Attorney Id. No. 30003

Attorney for Amicus Curiae,
Angeion Group, LLC

DATE:     10/4/13

# CERTIFICATE OF SERVICE

I, James C. Haggerty, Esquire, hereby certify that on this date I caused to be served the within Brief Amicus Curiae upon counsel below-named by U.S. first class mail, postage pre-paid, which service satisfies the requirements of F.R.A.P. 25:

>Matthew R. Ford, Esquire
>Christopher D. Landgraff, Esquire
>Rebecca Weinstein Bacon, Esquire
>Bartlit, Beck, Herman, Palenchar & Scott
>54 West Hubbard Street
>Room 300
>Chicago, IL 60654
>
>Caroline F. Bartlett, Esquire
>James E. Cecchi, Esquire
>Lindsey H. Taylor, Esquire
>Carella, Byrned, Cecchi, Olstein, Brody & Agnello
>5 Becker Farm Road
>Roseland, NJ 07068
>
>Joe R. Whatley, Jr., Esquire
>Whatley, Drake & Kallas
>1540 Broadway
>37th Floor
>New York, NY 10036

John Beisner, Esquire
Skaden, Arps, Slate, Meagher & Flom
1440 New York Avenue, N.W.
Washington, D.C. 20005


_____
JAMES C. HAGGERTY, ESQUIRE
HAGGERTY, GOLDBERG, SCHLEIFER &
KUPERSMITH
1835 Market Street, Suite 2700
Philadelphia, PA 19103
(267) 350-6600
Attorney Id. No. 30003


Attorney for Amicus Curiae,
Angeion Group, LLC


DATE:　　10/4/13