UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 12-2621

GABRIEL JOSEPH CARRERA*,
on behalf of himself and all others similarly situated

v.

BAYER CORPORATION;
BAYER HEALTHCARE, LLC.,
  Appellants

*(Amended Pursuant to the Clerk's Order of July 5, 2012)

(D. NJ No. 2-08-cv-04716)

SUR PETITION FOR REHEARING

Present: McKEE, Chief Judge, RENDELL, AMBRO, FUENTES, SMITH, FISHER, CHAGARES, JORDAN, HARDIMAN, GREENAWAY, JR., VANASKIE, SHWARTZ and SCIRICA, Circuit Judges

The petition for rehearing filed by Appellee the above-entitled case having been

submitted to the judges who participated in the decision of this Court and to all the other

available circuit judges of the circuit in regular active service, and no judge who

concurred in the decision having asked for rehearing, and a majority of the judges of the circuit in regular service not having voted for rehearing, the petition for rehearing by the panel and the Court en banc, is denied. Chief Judge McKee and Judges Ambro, Rendell, and Fuentes issue a separate opinion dissenting sur denial of the petition for rehearing en banc. Judges Smith, Chagares, and Scirica issue a separate opinion sur denial of panel rehearing.

BY THE COURT,

s/Anthony J. Scirica
Circuit Judge

Dated: May 2, 2014

ARL/cc:
Caroline F. Bartlett, Esq.
Lindsey H. Taylor, Esq.
Matthew R. Ford, Esq.
Rebecca Weinstein Bacon, Esq.
Richard H. Frankel, Esq.
Allison M. Zieve, Esq.
James C. Haggerty, Esq.

James E. Cecchi, Esq.
Joe R. Whatley, Jr., Esq.
Christopher D. Landgraff, Esq.
John Beisner, Esq.
Brian S. Wolfman, Esq.
F. Paul Bland, Jr., Esq.

2

## OPINION DISSENTING SUR DENIAL OF
## PETITION FOR REHEARING EN BANC

### No. 12-2621

AMBRO, Circuit Judge, with whom McKEE, Chief Judge, RENDELL, and FUENTES Circuit Judges, join.

*Marcus v. BMW of North America, LLC*, an opinion I authored, agreed with those "courts and commentators [who] have recognized that an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable . . . ." 687 F.3d 583, 592-93 (3d Cir. 2012) (citations omitted). Our Court's opinion in *Carrera* gives the impression to many that we now carry that requirement too far. Several *amici*—including this country's most recognized expert on procedure, Arthur Miller—warn that *Carrera* threatens the viability of the low-value consumer class action "that necessitated Rule 23 in the first instance." Br. of *Amici Curiae* Professors of Civil Procedure & Complex Litigation at 3. One District Court believes that *Carrera* "eviscerates low purchase price consumer class actions in the Third Circuit." *McCrary v. Elations Co., LLC*, No. 13-00242 JGB, 2014 U.S. Dist. LEXIS 844, at *24 (C.D. Cal. Jan. 13, 2014). Even if, as I believe, the ability to identify class members is a set piece for Rule 23 to work, how far we go in requiring plaintiffs to prove that ability at the outset is exceptionally important

1

and requires a delicate balancing of interests. It merits not only *en banc* review by our Court but also review by the Judicial Conference's Committee on Rules of Practice and Procedure.

## I.

Carrera brought a class action on behalf of Florida consumers alleging false advertising by the defendants (collectively "Bayer") in their marketing and sale of the multivitamin WeightSmart. In a fortuity that will undoubtedly become more prevalent should the Court's decision become entrenched law, Bayer did not sell WeightSmart directly to consumers. Moreover, there is no dispute that prospective class members are unlikely to have documentary proof of purchase. Few people keep receipts from drug stores for low-cost items. Despite the District Court's determination that the administrative burden of class certification was "not insurmountable" (as class members could be ascertained based on loyalty and reward card purchases, online sales, and affidavits), and despite that determination being unassailable but for an abuse of discretion, our Court reversed and vacated the certification order. Relying largely on our decision in *Marcus*, the Court held that the plaintiff's methods offered for ascertaining valid class members were insufficient.

## II.

"The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual

2

to bring a solo action prosecuting his or her rights." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)). The decision in *Carrera* gives fear that some wrongs will go unrighted because the wrongdoers successfully gamed the system.

The panel calls this case the natural follow-on to *Marcus*. I believe instead that *Carrera* goes too far. In *Marcus* the plaintiffs alleged that Bridgestone run-flat tires ("RFTs") were defective and sought to certify a New Jersey subclass of "[any] and [a]ll current and former owners and lessees of 2006, 2007, 2008, and 2009 BMW vehicles equipped with run-flat tires manufactured by Bridgestone . . . and sold or leased in [New Jersey] whose Tires have gone flat and been replaced . . . ." *Marcus*, 687 F.3d at 590. We explained, among other things, that being able to ascertain who the class members are is an essential precondition for Rule 23 to operate. There, determining someone was a member of the class required difficult individual findings that:

(1) The purported member had purchased a car from BMW with RFTs (made difficult because BMW did not have a record of which cars had RFTs);

(2) The car was equipped with RFTs when it left the dealership (made difficult because dealers would often alter the tires on a car); and

(3) The RFTs had gone flat and been replaced (made difficult because the class was not limited to those who brought their cars to BMW for repairs).

*Id.* at 593-94. Because the plaintiff offered no administratively feasible method to make these determinations on a class-wide basis, we vacated the class certification order.

In contrast to the prolix class definition in *Marcus*, the class here is simply "all persons who purchased WeightSmart in Florida." *Carrera v. Bayer Corp.*, 727 F.3d 300, 304 (2013). Despite this straightforward class definition, in ruling that the District Court abused its discretion, our Court's reasoning has a consistent theme—there is no evidence that class membership is capable of identification.

- "There is no evidence that retailers even have records for the relevant period." *Id.* at 309.

- "[W]e have no evidence the [Federal Trade Commission's method for identifying customers in CVS in another case involving a supplement with allegedly false advertising] was successful." *Id.*

- "Carrera has suggested no way to determine the reliability of . . . [the] model [proposed to weed out invalid affidavits of WeightSmart purchases]. . . . And even if [Carrera's expert] produced a model that is specific to this case, we doubt whether it could satisfy the ascertainability requirement." *Id.* at 311.

However, the District Court grappled with this precise question, examined the plaintiff's methods of ascertainability, and reached a contrary conclusion. *Carrera v. Bayer Corp.*, No. 08-4716, 2011 WL 5878376, at *4 (D.N.J. Nov. 22, 2011). The Court recognized that, because of Bayer's business model, it may not be simple to ascertain the class members, but nonetheless found that the hurdle was "not insurmountable." *Id.* The rationale for this finding was that the majority of class members could be determined by records from loyalty card programs and online purchasing receipts, and the remaining may be found through affidavits. *Id.* Undoing that determination requires us to decide that the District Judge abused his discretion. That is hard to do, as at the certification stage "ascertainabilty only

requires the plaintiff to show that class members *can* be identified," not their actual identities. *Carrera*, 727 F.3d at 308 n.2 (emphasis added).

Our Court's decision begs the question of what does work to identify class members. The opinion gives no hint even though it remanded for another "opportunity to satisfy the ascertainability requirement." *Id.* at 312. A guess at subtext for the rigid ruling of our Court is that the panel found fault with the Florida statute on which Carrera based his class action—the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*—as it has "no requirement of actual reliance on the deceptive act." *Carrera*, 727 F.3d at 309. The Florida provision requires only that the deceptive practice was likely to deceive a consumer. *Id.* Likely lurking as well is the real chance that few class members, once identified, will submit claims to share in a pot that is, at the theoretical maximum, $14 million. Only Carrera's counsel will profit along with the organization(s) designated to receive the surplus that may spawn an objection that there is insufficient direct compensation to class members. *See In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013).

Rule 23's implied requirement of ascertainabilty is judicially created. Because it is a creature of common law, I believe that we should be flexible with its application, especially in instances where the defendant's actions cause the difficulty. Where, as here, a defendant's lack of records and business practices make it more difficult to ascertain the members of an otherwise objectively

verifiable low-value class, the consumers who make up that class should not be made to suffer. The consequence of a step too far is the curtailment of well-intentioned class actions with many members yet all with claims too minimal to be asserted individually. I thus respectfully dissent from the denial of *en banc* rehearing.

In this context, I suggest that the Judicial Conference's Committee on Rules of Practice and Procedure look into this matter. Rule 23 explicitly imposes limitations on the availability of class actions. *Marcus* adds another—that class membership is reasonably capable of being ascertained. If the Committee agrees with that, how easy (or how hard) must this identification be?

## OPINION SUR DENIAL OF PANEL REHEARING

### No. 12-2621

SMITH, CHAGARES, and SCIRICA, *Circuit Judges*.

The petition for panel rehearing is denied. On the facts of this case, Carrera has not satisfied his burden to show that there is a reliable, administratively feasible method to determine class membership. As Bayer notes in its Answer to Appellee's Petition for Rehearing, "the Court invited Carrera on remand to develop a screening method to account for the unreliability demonstrated by his own testimony." Answer to Appellee's Petition for Rehearing and Rehearing En Banc at 14, *Carrera v. Bayer Corp.*, No. 12-2621 (3d Cir. Dec. 30, 2013). On remand, Carrera has the opportunity to submit a screening model specific to this case that can reliably distinguish between accurate affidavits and fraudulent or inaccurate ones. Bayer may challenge the reliability of the screening model. Carrera has yet to propose a specific model and the District Court has yet to examine one. We express no view regarding whether Carrera will satisfy this Rule 23 burden.

The other method Carrera put forth to show class membership—retail records—also suffered from a failure of proof. To date, Carrera has produced no evidence that a single purchaser of WeightSmart could be identified using records of customer membership cards or records of online sales.

Finally, as raised in Bayer's Answer to Appellee's Petition for Rehearing, it is unclear whether the Florida Supreme Court would determine that the causation element in the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") requires individualized proof. This issue was not developed in the briefs before the panel. There is significant disagreement on this matter within both the Florida District Courts of Appeal and the federal courts. *Compare Davis v. Powertel, Inc.*, 776 So. 2d 971, 974-75 (Fla. Dist. Ct. App. 2000) (holding FDUTPA has no reliance element and its causation element is susceptible to common proof), *with Philip Morris USA Inc. v. Hines*, 883 So. 2d 292, 294 (Fla. Dist. Ct. App. 2003) (per curiam) (questioning "whether *Davis* gives fair consideration to the principle of causation" in FDUTPA and decertifying the class because, on the facts before it, causation required individualized proof); *compare also Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1282-83 (11th Cir. 2011) (concluding causation in FDUPTA may be proved through common evidence), *with In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, Nos. 05 C 4742, 05 C 4744, 2012

1

WL 1015806, at *9-10 (N.D. Ill. Mar. 22, 2012) (disputing *Fitzpatrick*'s conclusion, determining "the great weight of recent authority in [the Florida state appellate courts] . . . holds that causation [under FDUTPA] typically requires individualized proof" and citing for support *Miami Auto. Retail, Inc. v. Baldwin*, 97 So. 3d 846, 857 (Fla. Dist. Ct. App. 2012), *Tire Kingdom, Inc. v. Dishkin*, 81 So. 3d 437, 448 (Fla. Dist. Ct. App. 2011), *quashed on other grounds sub nom by Soper v. Tire Kingdom, Inc.*, 124 So. 3d 804 (Fla. 2013), *Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1140-41 (Fla. Dist. Ct. App. 2008), *Egwuatu v. S. Lubes, Inc.*, 976 So. 2d 50, 53-54 (Fla. Dist. Ct. App. 2008), *Rollins, Inc. v. Butland*, 951 So. 2d 860, 871-75 (Fla. Dist. Ct. App. 2006), *Philip Morris USA Inc. v. Hines*, 883 So. 2d 292, 294-95 (Fla. Dist. Ct. App. 2003) (per curiam), and *Hutson v. Rexall Sundown, Inc.*, 837 So. 2d 1090, 1092-93 (Fla. Dist. Ct. App. 2003)). In light of these decisions, we ask the District Court to revisit whether causation under FDUTPA requires individualized proof.